# THE SUPREME COURT

OF THE

STATE OF NEVADA.

JULY TERM. 1875.

---

[No. 705.]

## H. LEE, RESPONDENT, v. F. W. CLUTE ET AL., APPELLANTS.

WITNESS—OPINION OF.—Where no sufficient predicate is laid to show that a witness is competent to give an opinion upon the question asked, an objection to the question, upon that ground, should be sustained.

CHANCE VERDICT.—If the jurors previously agree to a particular mode of arriving at a verdict, and to abide by the contingent result at all events, without reserving to themselves the liberty of dissenting, the verdict should be set aside; but if the method is adopted merely for the sake of arriving at a reasonable amount without binding the jurors by the result, the verdict should stand.

IDEM.—Where a jury have returned a verdict which is not in conflict with the law or the evidence, courts should not interfere, unless it clearly appears that the method adopted in arriving at the verdict was abused by some designing or obstinate juror purposely fixing upon an extravagantly high or low sum, and that there was no subsequent assent or ratification of the verdict.

APPEAL from the District Court of the Seventh Judicial District, Lincoln County.

This action was brought to recover the sum of twenty-seven hundred dollars, the alleged value of the plaintiff's services as a clerk.

Upon the trial the defendants introduced D. B. Shankland as a witness, who testified that he was in the employ of defendants with the plaintiff; that in the absence of the defendants the business could have been conducted better than it was; that the plaintiff was addicted to drink and was often under the influence of liquor, so much so that he would not know what he was doing; that in the absence of defendants from the store the plaintiff was generally under the influence of liquor and often incompetent to transact business, but kept the books of defendants. At this stage of the testimony the defendants asked the question referred to in the opinion. As to his competency to testify as to the manner in which mercantile books should be kept, the witness testified that he was never in the employ of any one as a clerk, or otherwise, until he went into defendants' store; that he did not keep the books of defendants while in the store; that he never kept any books of account; that he was in defendants' store with plaintiff about four months. The court sustained the objections of plaintiff's counsel to the question and the defendants excepted to the ruling.

The other facts are stated in the opinion.

*Robert M. Clarke*, for Appellant.

I. As the gravamen of this action was the value of respondent's services, it became material to know how he conducted appellants' business; as, for example, what attention he gave it, what labor he performed, what his capabilities were, how successful he was in conducting the business in Clute's absence. The witness Shankland was competent to answer the question asked. It called for *fact*, not *opinion*. The witness had clerked in Clute's store with respondent during a part of the time in controversy, and had per-

sonal observation of the "manner" in which "plaintiff conducted the business." Since, therefore, the question was material and the witness competent, it was error to exclude it.

II. The jury arrived at their verdict by the vicious process of "average;" they agreed that each juror should set down the value per month of respondent's services, according to his own judgment; that the aggregate should be divided by twelve and multiplied by the number of months, and that the quotient should stand as the verdict. This is an "irregularity" which the courts have universally condemned.

*A. B. Hunt*, for Respondent.

I. The question asked the witness Shankland called for an opinion and not for facts. The question asked could only have been answered by the witness giving his opinion as to the *manner* in which respondent conducted the business of Clute. It did not call for any fact as to what the respondent had at any time done; all that the witness testified to was as to what the respondent did, in the conduct of the business of Clute, and after the witness had told all he knew, as to the capacity of respondent, his habits, his drunkenness and his gambling, he was asked for an opinion.

II. It was not a subject upon which evidence of experts could be received. (*Enright* v. *S. F. & S. J. R. R. Co.*, 33 Cal. 236; *Reynolds* v. *Jourdan*, 6 Cal. 111; 1 Greenl. on Ev., Sec. 440, and note.)

III. The verdict was not a gambling verdict, even under the California statute, as to the ground for a new trial, to wit, the "misconduct of the jury," which is much more full than ours. (*Turner* v. *Tuolumne C. W. Co.*, 25 Cal. 473; *People* v. *Hughes*, 29 Cal. 262.)

By the Court, HAWLEY, C. J.:

This is an action to recover the value of plaintiff's services as a clerk in the mercantile store of defendants. Plaintiff

recovered a judgment and defendants moved for a new trial, which was refused. Hence this appeal.

Several assignments of error appear in the statement; only two have been urged, or are relied upon, by appellants.

1. During the progress of the trial defendants' counsel asked the witness Shankland, "In what manner did the plaintiff conduct the business in the absence of F. W. Clute?" This question was objected to by plaintiff on the ground that the witness was not competent to give evidence upon this subject. The objection was sustained by the court. If, as claimed by appellants, the question only called for an answer of fact, it had already been given by the witness; if, as claimed by respondent, it called for an opinion, no sufficient predicate was laid. In either view of the question, we think, no error occurred.

2. Appellants assigned, as one of the grounds for a new trial, "misconduct of the jury," and in support thereof produced the affidavit of two jurors: "That when said jury (that tried this case) had retired to deliberate upon their verdict—after having agreed that plaintiff was entitled to a verdict in some amount—said jury, in order to fix and ascertain the amount for which they would render a verdict, * * * and after having agreed that plaintiff was entitled to pay for twenty-four months' time and labor, agreed that each juror should mark down upon paper the amount which each juror would find for plaintiff per month, * * * and that the sum total of said amounts should be divided by twelve—the number of jurors—and the quotient thus arising should be multiplied by twenty-four—the number of months' time agreed upon—and that the amount arising from such multiplication should be the amount for which said jury would find for plaintiff; that in pursuance of such agreement said jurors did so mark down upon paper the amount each juror was willing to find for plaintiff per month, and that the amounts so marked down were added together, and the total sum thereof was divided by twelve, and the quotient arising from such division—rejecting a few odd cents—was multiplied by

twenty-four—the number of months' time agreed upon— * * * and that the sum arising from such last-mentioned multiplication was the amount for which said jury found for plaintiff."

Appellants contend that the verdict thus obtained was vicious, and ought to be set aside. The affidavit does not show that the jurors were to be absolutely bound by the result, but does state that the amount of their verdict should be ascertained in the manner stated. In the absence of an affirmative showing to the contrary, we think it must be presumed that each juror, as a sensible man of ordinary judgment and intelligence, reserved to himself the right to afterwards object to the amount if he should think it was not reasonable or just. Unless the verdict was obtained by chance or lot it was not vicious.

The authorities upon this subject are numerous, but not uniform. The rule, as stated in many of the decided cases, is to the effect that if the jurors previously agree to a particular mode of arriving at a verdict, and to abide by the contingent result at all events, without reserving to themselves the liberty of dissenting, the verdict should be set aside; but if the method is adopted merely for the sake of arriving at a reasonable amount without binding the jurors by the result, the verdict should stand. (*Dorr* v. *Fenno,* 12 Pick. 520; *Turner and Platt* v. *The Tuolumne Water Co.,* 25 Cal. 397, and authorities there cited.)

The cases where verdicts have been set aside proceed upon the theory that if upheld, where jurors bind themselves in advance, it might lead to great injustice, because it would enable one inveterate juror, by marking down a very large or small sum, to produce an average and procure a verdict for an amount which would be unreasonable, and at utter variance with the judgment of the other jurors. This would be a chance verdict, and whenever such misconduct is properly shown, the verdict ought to be set aside. In every case the verdict ought to be the result of reason, reflection and conscientious conviction. Nothing should be determined by accident, hazard, chance or lot. It is, how-

ever, very natural that in cases where there is no ascertained demand, there will often be found a difference of opinion as to the proper amount to be allowed. It seldom happens that twelve men are found who will at once agree upon the precise sum, and mutual concessions have to be made before a verdict is arrived at. Where this difference of opinion exists, and the jurors adopt the method selected in this case, if each juror marks down the sum which he thinks is correct and right, the result would fairly express the average judgment of the jury, and this mode of harmonizing upon the verdict would be just as pure and innocent as if effected "by word of mouth."

Our opinion is that where a jury have returned a verdict which is not in conflict with either the law or the evidence, courts should not interfere, unless it clearly appears that the method adopted was abused by some designing or obstinate juror, or jurors, purposely fixing upon an extravagantly high or low sum, and that there was no subsequent assent or ratification of the verdict. "Unless such abuse appears," say the court in *Copperthwaite* v. *Jones,* "the fraudulent design will not be presumed." (2 Dallas, 56.)

Mr. Chief Justice Kent, in *Smith* v. *Cheetham* (dissenting from the opinion of his associates), stated the rule which we think correct and applicable to the facts of this case. "The charge here," said the learned justice, "is not that the jury cast lots whether they should find for the plaintiff or defendant, but only that, in ascertaining the amount of the damages, they took the average sum deduced from the different opinions of each other. This has no analogy to the case of casting lots, or determining by chance for whom they shall find. The liquidation of damages must always, in a certain degree, be the result of mutual concession, since the amount of the injury is not susceptible of being ascertained with mathematical precision. If this mode of collecting the medium of their different opinions was fraudulently abused by any of the jury, by fixing on a sum intended to be extravagantly high or low, and which was not given in good faith, it would, perhaps, justify our interfer-

ence; but no such fraud appears, or is to be presumed, in the present case. I do not, therefore, think that this mode of ascertaining the average sum was, in itself, exceptionable, and if, when ascertained, it appeared to the jury to be a reasonable sum, under all the circumstances of the case, connected with sentiments of respect and conciliation for each other's opinions, I think it was not improper for them finally to adopt that sum." (3 Caines, 61.) In the case under consideration the affidavit fails to show that the method adopted of arriving at the amount, was abused, and the record shows that the jury, in open court, assented to the verdict after it was so found. We are clearly of the opinion that the verdict should not be set aside.

Entertaining these views it becomes unnecessary to decide whether the affidavits of jurors could be received, in any case, to establish the fact that the verdict was the result of chance.

The judgment of the district court is affirmed.