James ALLEN and Minnie Lee Allen,
Plaintiffs in Error,

v.

CITY OF TULSA, a Municipal Corporation,
Defendant in Error.

No. 38469.

Supreme Court of Oklahoma.

Oct. 20, 1959.

444

Paul Edwards, Tulsa, for plaintiffs in error.

Darven L. Brown, City Atty., Luther P. Lane, and Wilton W. Works, Asst. City Attys., Tulsa, for defendant in error.

BLACKBIRD, Justice.

This is an appeal from the judgment entered in condemnation proceedings instituted in May, 1957, by the City of Tulsa, as plaintiff, to acquire, through its right of eminent domain, a certain parcel of real estate belonging to plaintiffs in error (hereinafter referred to as defendants), for the purpose of opening and extending a city street across it. The subject property consists of a five-room house with two-room living quarters in a smaller separate structure behind it, both on a 80′ x 100′ lot.

The property was appraised by two of the three court-appointed commissioners as having a value of $12,500, while the third commissioner appraised it at only $7,000. After a jury trial pursuant to plaintiff's demand, defendants' damages from condemnation of the property were fixed, by the verdict, at $7,700.

Thereafter, defendants filed a motion for a new trial and, before any hearing thereon, also filed eight purported sworn statements by five persons who had been members of the jury that returned the verdict. Four of these statements, which were identical in wording, but bore the names of four different jurors, represented that, while on the jury, they would "have held out" for awarding defendants more than the amount of the verdict "but for the testimony of witnesses" at the trial "to the effect that the real estate * * * had been purchased" by defendants "approxi-

mately two years before said trial for * * $4500.00 * * * ". The four other affidavits, bearing the names of three of the same afore-mentioned jurors, and one other, indicated that the verdict was arrived at in the manner of "quotient" verdicts, by representing that during the jury's deliberations

"* * * it was suggested and agreed among the jurors that each * * * would write down on a piece of paper the sum he or she thought the defendants * * * should be awarded, and that then the total of the amount written down by all the jurors should be divided by twelve, and the resulting sum be incorporated in the verdict * * * as the award to * * defendants, which was done, in the amount of $7700.00."

In defendants' present appeal, they first refer to those of the above described statements to the effect that the jury's award was a quotient verdict, as conclusive of their right to a new trial, citing Salter v. Larison, 99 Okl. 245, 226 P. 585, Oklahoma City v. Stewart, 76 Okl. 211, 184 P. 779, and Williams v. Pressler, 11 Okl. 122, 65 P. 934. Plaintiff counters this argument by pointing to paragraph 4 of the syllabus in the Salter case, supra, restricting vacating of compromise verdicts to cases where the verdict cannot be justified on a hypothesis presented by the evidence, and with argument to the effect that there was ample evidence in the present case showing that the property involved was worth no more than the jury's award. Plaintiff's counsel also cite the rule prohibiting jurors from impeaching, or explaining, their verdict by affidavit or other sworn statement, citing Herber v. Snee, Okl., 294 P.2d 814, 815, and other cases. Said counsel also urge, in effect, that the trial judge was required, in ruling on defendants' motion for a new trial, to ignore their charge that the award was a quotient verdict, because the affidavits in question presented no competent evidence supporting such charge, citing H. A. Marr Grocery Co. v. Jones, 204 Okl. 183, 228 P.2d

388, 391, and other cases. In reply defendants say that plaintiff's argument fails to recognize that a quotient verdict is not a valid one. They also say that in agreeing, with each other to render such a verdict, jurors abandon the deliberative process, and litigants' right to a lawful trial is abrogated. They also say the decision in the Marr Grocery Co. case, supra, is "a departure from the long established general rule, which departure, if followed, may seriously weaken our jury system and certainly impose an injustice on many worthy litigants." Defendants' argument cannot be upheld. In the Marr Grocery Company case, we quoted an excerpt from American Jurisprudence, showing that the Oklahoma decisions forbidding impeachment of verdicts by jurors' affidavits is in accord with the general rule followed in most states as a matter of public policy; we noted that in some states said rule has been changed by statute; and then we significantly pointed out: "* * * but no such statute has been enacted in this state." In accord with the long-established rule to which we are committed, and with the precedents for its application, as exemplified by the Marr Grocery Company case, supra, we must here hold that the affidavits in question presented no competent evidence that the jurors' award was a quotient verdict. As these are the only part of the record pointed to by defendants for its support, we must hold their said charge to be without competent foundation, and therefore that the trial court committed no error in refusing them a new trial on that ground.

Under part "II" of their argument, defendants charge that the trial court erred in allowing the witness, John Taylor, to testify, over their objection, that he sold the property to the defendant, Allen, in 1955, for the sum of $4,500. They point to the four above described purported affidavits concerning the influence such testimony had on the action of four of the jurors, as indicating its prejudicial effect; but, in the third paragraph of this portion of their brief, they say:

**446** ◼︎　◼︎◼︎◼︎◼︎◼︎◼︎◼︎◼︎◼︎◼︎◼︎

"Conceding but not agreeing with the general rule that condemnees' purchase price paid for property being taken may be proved by condemnor under proper circumstances when not too remote, and when accompanied by appropriate instructions as to weight of testimony; in the discretion of the trial Judge but subject to review thereof on appeal (City of Enid v. Moyers [196 Okl. 470], 165 P.2d 818 [173 P.2d 419]; Chapman v. U. S. [10 Cir.], 169 F.2d 641): Yet, refusal to admit such evidence of purchase price rests in the Sound discretion of the Judge (Okla.[homa] Turnpike [Authority] v. Williams [Okl.], 257 P.2d 1052) in the light of the particular circumstances of each case; and if same alone, or considered with other evidence introduced by condemnor, makes it appear to the jury that defendants, having acquired the property at a low price, were speculating in lands on which use for roadway was contemplated, such evidence of purchase price paid is prejudicial to the rights of condemnees, and is not competent. (Quinn v. State [ex rel. King] (Okla.) [173 Okl. 536], 49 P.2d 98). Also, note (2), holding a recent purchase offer and its acceptance, in a previous transaction covering the same land was not competent evidence as to reasonable value of the land taken."

In view of defendants' above quoted concession as to the general rule recognizing the competency of evidence showing the price condemnees have paid for property involved in condemnation proceedings, and the predication of its inadmissibility in this case on whether or not it makes it appear that they were speculating on property the city contemplated using for a right of way, the issue submitted may be determined by ascertaining whether or not the evidence in question had such fault that was referred to in Quinn v. State ex rel. King, supra [173 Okl. 536, 49 P.2d 100]. There the court said the questioned evidence was obviously offered "to make it

appear that the defendant Quinn was deliberately purchasing land along the proposed highway to speculate at the expense of the state, and thereby to prejudice the jury against said defendant." It was also noted that the plaintiff State's counsel left an inference in his argument to the jury to such effect. We there said: "No such inference can fairly be drawn from the facts and circumstances in the case"; and held that where such counsel, "in argument to the jury, makes a statement of a material fact, not in evidence, * * calculated to prejudice the jury, over the objection of his adversary, he violates the right of a fair trial. * * *." We perceive no part of the opinion in the Quinn case, conceivably within the scope of counsel's reference to it, that is applicable to this case. Here, as in that case, no more inference can be drawn that defendants purchased the property involved to speculate on at the expense of the condemnor than we there said could be drawn from the facts and circumstances in that case.

◼︎　There is no merit in defense counsel's assertion in part "III" of their brief that the verdict herein "is fatally deficient in that it does not state what number of jurors purported to concur in" it. This contention apparently refers merely to the fact that the verdict was signed only by the jury's foreman. Such single signature was sufficient for a unanimous verdict both under the trial court's instructions and the statute. See Title 12 O.S.1951 § 586. Said statute provides that such a verdict is "complete * * * if no disagreement be expressed (by the jurors), and neither party requires the jury to be polled." As far as the record discloses, neither of such contingencies occurred in this case and, as plaintiff's counsel point out, no objection was made to the form of the verdict. Defendants can therefore not now be heard to call it an "implied verdict."

◼︎◼︎　In part "VI" of their brief, defendants contend that the amount awarded

them by the verdict was grossly inadequate to compensate them for the property involved, "and same was contrary to greatest weight of competent evidence adduced." In support of this contention, they refer to the testimony of their witnesses, John Taylor, Allen Hawkins, and Roy Selby, whose opinions of the value of the property ranged from $12,500 to $15,000. They seek to minimize the weight to be given the testimony of plaintiff's witnesses, Iams and Johnson, who valued the property at between $5800 and $6200, and $7000, respectively, by saying that these witnesses valued other "comparable" properties at larger figures. Support for this charge is sought to be formulated by dividing the subject values by the number of square feet in the lots of the properties and attributing the properties' entire value to their lots alone, without attributing any part of it to the houses located thereon. We have carefully examined all of the testimony and do not concur in counsel's appraisal of it. Assuming that it supports counsel's claim that the properties referred to were "comparable" as to the ages of the structures thereon, it does not support his claim that they were comparable in other respects, or his theory of evaluating the properties on their lots' square footage alone. The witness, Iams, pointed out that to base estimated values of such properties on that factor alone was not proper. While the witness Johnson used *front* footage as one of his methods of arriving at the value of such properties, both witnesses called attention to the unusually inaccessible location of the lot in question and to other features of the property that made it less valuable than some of the others whose appraisals were mentioned. The jury was the sole judge of the weight and sufficiency of the testimony of the various witnesses and the photographs and other evidence introduced. In view of the fact that its verdict was more than the value placed on the property by some of the witnesses—none of whom is claimed to be unqualified—there is not the "disparity" between the witnesses' estimates and the

jury's verdict which prevented us in the Quinn case, supra, from concluding that the verdict was not the result of prejudice. The record does not support defendants' charge that the verdict is grossly inadequate. Whether or not that determination is in accord with the "greatest weight of competent evidence * * *" is not a proper subject for review herein.

In part "IV" of their brief, defendants complain of error in the trial court's instruction No. 1, in which the jury was told:

"The burden of proof is upon the defendants to establish by a preponderance of the evidence the value of the land taken and their rights to a reasonable compensation therefor."

The gist of defense counsel's argument seems to be that since plaintiff was the "moving party" in these proceedings and was the party, which, in its demand for a jury trial, alleged that the value set forth in the commissioners' report was "an amount greatly in excess" of the property's value, the burden was on it to prove the allegations by a preponderance of the evidence. Counsel cites no authority for this argument and it is not supported by our previous decisions. See Nichols v. Oklahoma City, 195 Okl. 305, 157 P.2d 174. In connection with this subject generally, notice 29 C.J.S. Eminent Domain § 271, at Note 82. Defendants say the subject instruction was also erroneous in requiring them to prove their right to reasonable compensation for the property (a right said to be guaranteed them by our Constitution) and in referring to the property as "land." They recognize that in at least one of the instructions given the lot and two houses involved were referred to as "property", but they say such "varying terminology" could only serve to confuse the jury. We cannot believe the jury was misled by either of the errors complained of. There was no issue, or dispute, at the trial as to defendants' right to reasonable compensation for the property involved. In its demand for a jury to fix the amount of such compensation plaintiff conceded de-

fendants were entitled to damages—the only question being how much. Also, it was made quite clear at the trial, and was undisputed, that the property involved consisted of more than just land, or the lot, but included, in addition thereto, the two buildings thereon. We think that under the rule stated in the fourth paragraph of the syllabus of our opinion in St. Louis-San Francisco Ry. Co. v. Withers, Okl., 270 P.2d 341, the errors here dealt with were harmless.

■ Under Part "V" of their brief, defendants contend that the trial court erred in admitting certain testimony of the witness, Iams, concerning prices paid during certain previous years for three other parcels of residential property in the same area as the one in which the subject property is located. As to that portion of their argument about $9,000 being paid for one and $8,000 being paid for another in 1950, defendants cite Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 277 N.W. 394, 124 A.L.R. 897, as holding that: "testimony as to price obtained by other and unrelated properties, at other times, between other buyers and sellers is incompetent, irrelevant, immaterial and prejudicial when offered as substantive evidence * * *". That is not an accurate statement of the rule in this jurisdiction. See Durell v. Public Service Co. of Okla., 174 Okl. 549, 51 P.2d 517; 18 Am.Jur., "Eminent Domain", sec. 351. The record does not support the charge that the testimony in question was introduced as substantive evidence of the value of defendants' property. It does reveal, clearly and plainly, that the witness merely mentioned these properties and their prices in attempting to show the fallacy in a method of evaluating property by multiplying its monthly rental by 100; and, there is nothing in the record to indicate that the jury did not clearly understand this. We therefore think that the error in the admission of said testimony, if any, was harmless.

As we have found in the arguments presented for that purpose, no valid ground for reversing the judgment of the trial court, the same is hereby affirmed.