CITIES SERVICE OIL CO. et al.
v. KINDT.

No. 32974.   July 8, 1947.

Rehearing Denied March 16, 1948.
Second Petition for Rehearing
Denied March 30, 1948.

*190 P. 2d 1007.*

Ray & Selby, of Bartlesville, for plaintiff in error Leonard Richison.

W. E. Green, J. C. Farmer, Robert J. Woolsey, David H. Sanders, and Otho Flippo, all of Tulsa, for plaintiff in error Cities Service Oil Company, a corporation.

Chas. W. Pennel (A. O. Harrison, of counsel) both of Bartlesville, for defendant in error.

BAYLESS, J.  Plaintiff, Ferol Kindt, brought an action in the district court of Washington county against the defendants, Cities Service Oil Company and Leonard Richison, to recover damages for personal injuries received by plaintiff when she fell upon the sidewalk in front of a filling station owned by Cities Service.  Plaintiff alleged in her petition that defendant Richison was the agent of Cities Service.  Both Cities Service and Richison contended they were guilty of no negligence, and Cities Service defended for the further ground that Richison was an independent contractor.  The trial resulted in a verdict and judgment in favor of plaintiff in the sum of $2,000, from which judgment both defendants have appealed. The parties will be referred to as they appeared in the trial court.

Plaintiff's evidence established the following facts:  The defendant Richison, at the time of the accident and prior thereto, had a Cities Service filling station under lease.  The filling station was located on the southeast corner of Fourth street and Keeler avenue in the city of Bartlesville, just across the street from the Phillips Petroleum Company's office building. There were two driveways or drive-ins leading into the station, one from each of the intersecting streets. The gasoline pumps were set out in an open area in front of the station proper in two rows in the customary manner.  Customers drove in and out from either street, crossing the sidewalk in doing so.  The plaintiff lived on Keeler avenue, a few blocks south of the station, and passed along the sidewalk in front of the station several times daily in going to and from her work.  On the day of the accident plaintiff, while walking to work, slipped on a "small patch of oil between a half dollar and dollar in size" on the sidewalk in front of the filling station.  Her foot slipped and she fell, causing her to receive a fractured kneecap and other injuries.

There were two spots of oil on the sidewalk, the small spot which caused plaintiff's fall, and a larger spot close by, perhaps a foot or less from the smaller spot. It was observed after the accident that the smaller spot was smeared by plaintiff's heel mark. The accident happened between 1:15 and 1:30 p.m. It was not shown that defendant Richison or any of his employees were responsible for the oil being on the sidewalk or that they had any knowledge of its existence at the time of the accident. To establish that the oil had been on the walk for some period of time in order to charge defendant Richison with constructive knowledge, plaintiff testified that for a number of blocks south of the filling station there was nothing to obstruct her view of the station; that on the day of the injury she looked straight ahead as she walked north on Keeler avenue toward the filling station; that she watched the entrance to the filling station approximately from the time she was five blocks away and she was positive that she observed it for the last three blocks and she did not observe any cars on the walk or any driving in or out of the station; that it took approximately eight minutes for her to walk three blocks, traveling at the pace she was going on that day. Defendant Richison testified that he observed the area where the accident occurred some time between 12:30 and 1:00 and he was positive there was no oil there at that time. He further testified that he serviced about 50 to 80 cars per day. At the close of plaintiff's evidence in chief, both defendants demurred to the evidence and they renewed their demurrers at the close of all of the evidence.

The first question that arises is, What duty does the operator of a filling station, whose customers traverse a public sidewalk in going to and from the filling station, owe to those who travel on the sidewalk, where the walk adjoins the filling station property and for practical purposes is used as part of the station's premises in connection with the operation of the business? It is not necessary to decide whether this duty is equal to or greater than that owing to the licensee or to an invitee. He is not an insurer of their safety. He owes a duty of reasonable care to keep the premises free of things of a nature dangerous to pedestrians which may come to be there as a natural result of the operation of the business. 33 A.L.R. 181, annotation. The defendants in their briefs do not contend that because said accident occurred on sidewalk used by customers entering the filling station instead of upon their premises that a different rule as to their liability would apply.

In order to establish negligence on the part of defendant Richison, plaintiff must show that Richison or his employees placed the oil on the walk, or had knowledge of its being there, or that it was there such a length of time that he should have known of its presence. Owen v. Kitterman, 178 Okla. 483, 62 P. 2d 1193; Rossberg v. Montgomery Ward & Co., 110 Mont. 154, 99 P. 2d 979; Drotar v. Penn. Ry. Co., 120 N.J.L. 119, 199 Atl. 75. The nature of defendant's business was such that he should expect motor oil to accumulate on the station premises proper, as well as on the sidewalk in front of the station. The danger of an accumulation of grease or motor oil on a heavily traveled sidewalk is too obvious to require further discussion. The question of proximate cause was clearly for the jury to pass on. The question that has caused us the most trouble, and it is not free from serious doubt, is that of notice or constructive knowledge of the existence of oil on the sidewalk at the time of the injury. It was not shown that defendant either placed the oil on the walk or that he had actual knowledge of its existence. Was the time element sufficient to charge him with constructive knowledge? The jury could reasonably infer from the evidence that the condition had existed for eight minutes or longer.

Richison testified that he observed the area where the accident occurred

about 30 minutes or an hour before the accident. The court held in Van Wye v. Robbins (Cal. App.) 120 P. 2d 507:

"Where evidence justified finding that a spot of grease had remained upon surface of a free parking space provided by a market operator for his customers for more than 20 minutes before a customer slipped thereon, whether a sufficient time had elapsed to constitute 'constructive notice' to market operator of unsafe condition of the premises was a 'question of fact.'"

This holding has been approved many times by the Supreme Court of California in later cases. See, also, French v. Gardeners & Farmers Market Co., Inc., 275 Ky. 660, 122 S.W. 2d 487.

The evidence established that several hundred people used this walk daily; employees of Phillips Petroleum Company, whose office building was across the street from the filling station, employees of the Cities Service Company, whose office building was a few blocks north of the station, and many others going to and from town. How often defendant Richison should inspect the sidewalk, tested by what the reasonably prudent person would do, was a question for the jury to pass upon. All reasonable minds would agree that if the oil had been dropped just an instant before the accident, the time lapse would be insufficient to charge defendant Richison with constructive knowledge of its existence. There are many cases holding no liability where plaintiff failed to show how long the dangerous condition existed before the injury. We are unable to say all reasonable minds would agree that the time lapse was insufficient to charge defendant with constructive knowledge of the existence of the oil on the sidewalk. See the following authorities where defendant was held to have constructive knowledge of a dangerous condition. Wheeler v. Deutch, 272 N.Y.S. 161; Hogan v. S. S. Kresge Co. (Mo. App.) 93 S. W. 2d 118; Fox v. Ben Schechter & Co. (Ohio App.) 13 N.E. 2d 730; Hudson v. F. W. Woolworth Co., 275

Mass. 469, 176 N.E. 188. Contra, see Varner v. Kroger Grocery & Baking Co. (Mo. App.) 75 S.W. 2d 585; and Shea v. First National Stores, Inc., 63 R.I. 85, 7 Atl. 2d 196. We think it was proper to submit this question to the jury.

Defendant Richison was operating under a written lease by which the Cities Service leased to him grounds, buildings, and considerable equipment to be used in connection with the business, for which he was to pay one-half cent per gallon for all motor fuel bought from the company, provided he operated the station six days a week for eight hours a day; or in the event he failed to do so, to pay $100 per month. He agreed to keep the station, together with the adjoining sidewalks and entrance driveways, in good order and in clean, safe, and healthful condition to the reasonable satisfaction of the lessor, and to keep the station and all fixtures, equipment, and machinery thereon in good repair and operating condition to the reasonable satisfaction of lessor. It was further agreed:

"Without limitation, any business conducted upon the demised premises shall be solely owned, operated, and maintained by Lessee, free of control, supervision, management or ownership by Lessor, and without any agency or authority from Lessor for the employment of others, or in any other respect."

The company was authorized to terminate the lease without notice upon breach of the terms of the lease by lessee.

It was established by parol testimony that the station was listed in the telephone directory and the city directory as Cities Service Oil Company station, Leonard Richison, manager; that the Cities Service Company paid the telephone bill; that there is a sign on the filling station property which reads "Cities Service Oil Company"; and the six pumps on the premises bear the name of Cities Service; that the company passes on credit of persons to whom credit cards are issued; that

a representative from the company inspects the premises for sanitation, etc., about once every month. Richison testified that taxes, both state and federal, were charged to him on every invoice of gasoline; that he paid the taxes at the time of delivery, but the company made the reports to the Tax Commission and the Federal Government and paid the necessary tax; that he paid cash for the gasoline at the time of delivery; that he had five men working for him at the time of the accident; he had the sole right to hire, fire and pay them, and to direct them as to what to do; that he pays all utility bills except the telephone bill and also pays the Social Security Tax on his employees; that he sells Cities Service gasoline and oil products exclusively, but also sells outside accessories. There is no evidence in the record that the company exercised or had the right to exercise any control in the physical details of operating the station.

It seems clear to us that plaintiff has failed to establish that Richison was an agent, servant, or employee of the company. Power to control is a necessary element of agency and it is entirely lacking in this case. In 35 Am. Jur., Master and Servant, §5, the rule is stated as follows:

"The determination of whether a relationship is strictly that of master and servant or is an independent contractor relationship, or whether a person is an independent contractor or merely an employee or a servant, depends upon the power of control which the employer is entitled to exercise over the person in question. The relation is that of independent contractor where it appears that a person employed to do work is not, in the execution and performance of such work, subject to the control of the employer, but is free to execute the work without being subject to the orders of the employer with respect to the details thereof."

In vol. 1, Restatement of the Law, Agency, §2 (3), it is said:

"An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

See, also, Bokoshe Smokeless Coal Co. v. Morehead, 34 Okla. 424, 126 P. 1033; Atlas Life Insurance Co. of Tulsa v. Foraker, 196 Okla. 389, 165 P. 2d 323; Butcher Packing Co. v. Hixon, 189 Okla. 700, 119 P. 2d 1019. There are a number of filling station cases, but none from this jurisdiction. The court held in Texas Co. v. Wheat, 140 Tex. 468, 168 S.W. 2d 632:

"Whether relation of 'master and servant' existed between lessor of gasoline filling station and lessee so as to make the doctrine of respondeat superior applicable, depended on whether lessor had the right to control the lessee in the details of the work to be performed in operation of the station."

"Where oil company did not have the right, nor did it undertake to exercise the right to control gasoline filling station operator and his employees in the details to be followed by them in keeping oil company's station clean, and employees were free to perform such work as they saw fit, company was not liable to pedestrian for injuries sustained by her in fall on sidewalk in front of station because of oil on sidewalk."

See, also, Reynolds v. Skelly Oil Co., 227 Iowa, 163, 287 N.W. 823; Shell Petroleum Corp. v. Linhan (Miss.) 163 So. 839; Hudson v. Gulf Oil Co., 215 N.C. 422, 2 S.E. 2d 26; Brown v. Standard Oil Co., 309 Mich. 101, 14 N.W. 2d 797; and Brittain v. Atlantic Refining Co., 126 N.J.L. 528, 19 Atl. 2d 793.

We hold that plaintiff failed to establish that Richison was the company's agent, servant, or employee. On the other hand, the evidence establishes that he was an independent contractor. The trial court therefore erred in overruling the demurrer of the Cities Service to plaintiff's evidence and in

submitting the question of agency to the jury.

Defendants complain that the verdict returned to the court and upon which judgment was rendered was not the verdict that the jurors intended to return. After the verdict was received into court the foreman of the jury stated to the court that the jurors had signed the wrong verdict, he thought. Another juror stated it was his idea to find against Cities Service but not against defendant Richison. The court inquired of the jurors if any of the others had the same idea, to which question one juror answered. "We all did." The court then instructed the jury that it could find for Cities Service and against Richison, but that if it found against Cities Service, Richison would be liable as a matter of law. He then instructed the jurors as follows:

"Reconsider it and if you want to re-submit this verdict, do so. If you don't, make up the one you want to submit."

After retiring for ten minutes, the jury returned the same verdict. Each juror was then polled by the court individually, and the eleven jurors who signed the verdict each stated that it was their verdict.

The attack on the jury's verdict in the instant case differs materially from the ordinary attack on a jury verdict in that the conduct of the jury occurred at the time that the verdict was returned to the court and was in the presence of the court and was presented by the jury at that time to the trial judge, and our discussion will be confined to that type of case which occurs in the presence of the court at a time when the verdict is being returned by the jury, and such discussion will not necessarily apply to a case involving testimony and statements made by jurors after their verdict has been received and filed.

There can be no question but that the jurors did not intend to find against the defendant Richison when they first returned their verdict against both defendants, yet within ten minutes after it was disclosed that they had not intended to return a verdict against the defendant Richison, they again returned a verdict holding both defendants liable, despite the fact that no additional evidence was submitted or any additional instructions given them by the court except a reiteration of an instruction formerly given them to the effect that in order to find the corporate defendant liable, it would be necessary to also find the defendant Richison liable.

We have herein held that the trial court should have sustained Cities Service's demurrer to plaintiff's evidence. It is probable that had said demurrer been sustained and the trial continued as against the defendant Richison alone, the jury would have returned a verdict in his favor.

We have hereinbefore discussed the weakness of plaintiff's evidence concerning liability, and it is our opinion that the only reason the jury changed their minds as to the liability of the defendant Richison was in order to hold the corporate defendant liable.

In Williams v. Pressler, 11 Okla. 122, 65 P. 934, the Territorial Court said:

"A verdict is the unanimous decision made by a jury and reported to the court, on matters lawfully submitted to them in the course of the trial of a cause, and should be the result of sound judgment, dispassionate consideration and conscientious reflection.

"Litigants in a cause before a jury are entitled to the free, deliberate, unbiased and conscientious judgment of twelve jurors, and a verdict should not be permitted to stand which has been brought about by any undue or improper influences, or made to depend upon any contingent result."

We do not think, under the circumstances of this case, that the second verdict returned against both defendants was the free, deliberate, unbiased, and conscientious judgment of the jurors signing the verdict, and for that reason

the defendant Richison is entitled to a new trial.

The judgment is therefore reversed and remanded to the trial court to proceed not inconsistent with the views herein expressed.

HURST, C.J., DAVISON, V.C.J., and CORN, GIBSON, ARNOLD, and LUTTRELL, JJ., concur. RILEY and WELCH, JJ., dissent.

The defendant in error, on January 13, 1948, filed herein a pleading designated as "Suggestion of Death of Plaintiff In Error", which motion, in effect, alleges that the defendant, Leonard Richison, one of the plaintiffs in error herein, died on August 14, 1947, at Bartlesville, Oklahoma, and that no administration has been taken out on the estate of said Leonard Richison Therefore, as is the custom of this court in such cases, the opinion herein rendered will be as of the date the case was submitted to the court, which was on July 8, 1947, and prior to the death of said Leonard Richison.

RILEY, J. (dissenting). I think the judgment should be affirmed. The question of agency was properly submitted to the jury and by the jury's verdict resolved favorably to plaintiff. Herein, defendant Cities Service Oil Company exercised the contractual right of inspection for cleanliness of the station. While that inspection was at intervals of 30 days, if necessary, to avoid an omission of duty due and owing to pedestrians such as plaintiff, inspection might have been at more frequent intervals. That which the corporation might have done itself, it could have done through its agent, the co-defendant, operator of the station, Missouri so holds. Green v. Spinning (Mo.) 48 S.W. 2d 51.

I think the jury had right to inquire of the court concerning its tentative verdict. The final verdict rendered was properly accepted by the court and approved by the judgment rendered. That should be sufficient if the verdict and judgment are sustained by the evidence. The evidence of record sustains the verdict and judgment.